38 Wis.2d 381 (1968)
MUTUAL FEDERAL SAVINGS & LOAN ASSOCIATION of Milwaukee, Appellant,
v.
SAVINGS & LOAN ADVISORY COMMITTEE and another, Respondents.[*]
Supreme Court of Wisconsin.
February 26, 1968
April 9, 1968.
*385 For the appellant there were briefs by Frisch, Dudek, Banholzer & Slattery of Milwaukee, attorneys, and Edward A. Dudek and Robert A. Slattery of counsel, and oral argument by Edward A. Dudek.
For the respondent The Savings & Loan Advisory Committee of Wisconsin the cause was argued by Robert J. Vergeront, assistant attorney general, with whom on the brief was Bronson C. La Follette, attorney general.
For the respondent Security Savings & Loan Association there was a brief by Schoendorf & Schoendorf of Milwaukee, attorneys, and Joseph F. Schoendorf, Jr., of counsel, and oral argument by Joseph F. Schoendorf, Jr.
HALLOWS, C. J.
On this appeal Mutual raises several questions which are best determined seriatim.
I.
Does the one mile limitation in sec. 215.13 (39) (b), Stats., apply?
While there is a distinction between the absorption of one savings and loan association by another and the consolidation of savings and loan associations, they are treated alike in respect to a possible resulting branch office. Absorptions are governed by sec. 215.27, Stats., which requires the affirmative vote of at least two thirds of the board of directors of each association. All the assets of the absorbed association are transferred to the *386 absorbing association. All the rights, franchises and property rights of the absorbed association are deemed to be transferred to the absorbing association, which holds and enjoys them in the same manner and to the same extent as they were held and enjoyed by the absorbed association. Consolidations are effected under the procedure provided in sec. 215.28. This is done by a resolution of the board of directors of each association ratified by 51 percent of the dollar value of the savings accounts outstanding. Whether associations are merged by absorption or consolidation, a branch office may be maintained and operated at the location of the absorbed or consolidated association by virtue of sec. 215.13 (40) providing the branch is within the same county or within 35 miles if the county lines intervene. It was under this section that the commissioner and the advisory committee allowed the maintenance and operation of the branch by Security at the old location of Aetna.
It is contended this section has no application to the facts because sec. 215.13 (39) (b), Stats., is a special statute applicable to Milwaukee county. This section[1] provides two things: (1) A savings and loan association may establish and maintain branches, and (2) an association may purchase or consolidate with another association and convert such association into a branch within the county. However, as we read this section, the branch, whether established or converted from an association, must be within the county or within 20 miles of the parent association if a county line intervenes. These restrictions apply whether the branch is created by establishment or *387 by conversion of an existing association. The word "establish" as used in this section means to start business from scratch at that location. This is indicated by the use of the phrase "in each case." We agree with the circuit court this phrase applies to the manner of creating branches and does not mean "in every case," which meaning would make the phrase superfluous.
The section also provides "but no branch savings and loan may be established within one mile of an existing home savings and loan office." We read this one mile limitation to refer only to those branches which are established and not to those which are converted from existing associations, whether through consolidation or absorption. The use of the word "establish" in the one mile limitation at the end of the sentence comprising subsection (b) should not be enlarged over its use in the first part of the sentence. Under rule reddendo singula singulis when one sentence such as is involved in sec. 215.13 (39) (b), Stats., contains several antecedents ("establish" and "convert") and several consequents (the 20 mile and one mile limitations) they are to be read distributively, so that each word, i.e., "establish," is applied to the subjects or consequents to which it appears by context most properly to relate and to which it is most applicable. 2 Sutherland, Statutory Construction (3d ed.), p. 423, sec. 4918. While the word "absorption" is not used in this sentence, the word "purchase," appearing in juxtaposition with "consolidate," includes absorption as a manner of "purchasing" a savings and loan association. A court may enlarge or restrict the meaning of a word in a statute to harmonize it with the manifest intent of the entire section. State ex rel. Neelen v. Lucas (1964), 24 Wis. 2d 262, 128 N. W. 2d 425; State ex rel. Thieme v. Gregory (1930), 202 Wis. 326, 232 N. W. 546.
This construction is substantiated by the legislative history of that subsection. As pointed out by the circuit court, it was added to the original bill which created secs. *388 215.03 (9), 215.13 (39) and (40), Stats., which provided for branch offices. Laws of 1965, ch. 427. Prior to this amendment, branches which were to be established were to be governed by the subsection then numbered (39) and those created by absorption or consolidation were to be governed by subsection (40). Both contained the 35 mile limitation. The amendment creating subsection (39) (b) applied in effect only to Milwaukee county and qualified both subsections (39) (a) (40). This bill also created sec. 215.03 (9) which provided the conditions for the establishment of branch offices subject to limitations of sec. 215.13 (39). This section made no reference to branches created by absorption or consolidation in subsection (40).
The use of the word "establish" in a limited sense, which does not include the creation of a branch as the result of absorption or consolidation, is not unreasonable or unusual in legislation dealing with financial institutions. See Old Kent Bank & Trust Co. v. Martin (D. C. Cir. 1960), 281 Fed. 2d 61 (Federal Reserve Act). See also, N. Y. Banking Law, sec. 396 (2), (3); N. J. S. A. 17:12 A-21 A, B; Conn. Stats., sec. 36-180.
II.
Does sec. 215.03 (9) (a), Stats., apply to the creation of a branch through absorption?
This section provides that any association desiring to establish a branch office subject to the limitations of sec. 215.13 (39), Stats., must do so through the procedure of a public hearing before the commissioner upon a filed application for a certificate of authority. The basic question at issue is whether such branch is or is not in the best interest of the public, and the commissioner may refuse a certificate when he deems it is not or when other good and sufficient reasons exist for the refusal. This *389 section uses the word "establish" as does sec. 215.13 (39) (a) and (b). Since we have decided the word "establish" as used in the latter section does not encompass branches which are created by conversion as a result of absorption or consolidation, sec. 215.03 (9) (a) does not apply to such manner of creating branches. The word "establish" in sec. 215.03 (9) (a) has no greater meaning than it has in sec. 215.13 (39). Consequently, a branch created as a result of absorption or consolidation at the location of the absorbed or consolidated association does not require the procedure for establishment provided in sec. 215.03 (9) (a) to be followed. We reject the argument this section creates the right to operate a branch office after absorption and the provisions of sec. 215.13 (39) and (40) are concerned only with location.
III.
Is there an unconstitutional delegation of legislative power?
It is argued this interpretation results in an unconstitutional delegation of legislative power to the commissioner because the legislative standards provided in sec. 215.03 (9), Stats., do not apply and thus there exist no standards for branches created by absorption or consolidation. It is true that discretionary power of a legislative nature may be delegated only if statutory standards exist to govern its exercise. Olson v. State Conservation Comm. (1949), 235 Wis. 473, 293 N. W. 262; Milwaukee v. Sewerage Comm. (1954), 268 Wis. 342, 67 N. W. 2d 624. However, in respect to branches created by absorption and consolidation, no standards other than those provided by sec. 215.13 (39) (b) and (40) need exist. The legislature determined the necessary legislative standards when it provided savings and loan associations could be absorbed or consolidated and in such cases a *390 branch might be continued at the location of the absorbed or consolidated association under certain conditions. The only standards are the distances set forth in sec. 215.13 (39) (b) and (40) and these are sufficient for the purpose of location. The commissioner's discretion is limited to these standards. We find no merit in this argument.
IV.
Can a branch office be located on a fifth floor and in shared-office space?
Mutual argues a branch office of a savings and loan association cannot be located on an upper floor of a building or in space shared with another tenant. Here, the branch office is on the fifth floor of an office building in downtown Milwaukee and the manager is also engaged in the real estate business. Both of these conditions were quite common years ago in the early days of the building and loan associations. Mutual relies on sec. 215.07 (13) (a) 8, Stats., in support of its position, but this section deals with incorporation and refers to the offices of a proposed association. The section requires the incorporators to file a certificate with the commissioner, stating inter alia ". . .that ground floor, independent office quarters have been obtained for the proposed association; . . ." There is no statute requiring a branch office of an existing association to be in independent office quarters or to be on the ground floor of a building.
V.
Was there a fair hearing before advisory committee?
Mutual contends it did not receive a hearing before the advisory committee in conformity with the fair play *391 provisions of ch. 227, Stats., and with the dictates of due process. It claims it was denied a prehearing conference as provided by the committee's rules 7 Wis. Adm. Code, sec. S-L 1.01 (15), January, 1964, Register No. 97; that it was not allowed to put in evidence an offer of proof relating to the factual needs of public interest and the dormancy of Aetna; that the commissioner was present during the time the advisory committee discussed and reached its decision; and that one of the members of the committee voted by mail without hearing the evidence. These are serious objections to a fair hearing before an administrative agency.
We think the approval of the commissioner, such as is required in sec. 215.03 (9), Stats., or the more limited one as required in sec. 215.13 (39) (b), is an "act" of the commissioner which may be reviewed by the advisory committee under sec. 215.04 (7).[2] A final order or determination of the committee is expressly made by sec. 215.04 (9) subject to review under ch. 227. One has a right before an administrative agency to make a record for judicial review in cases subject to review under ch. 227. In Ashwaubenon v. State Highway Comm. (1962), 17 Wis. 2d 120, 115 N. W. 2d 498, we pointed out that an agency, even in a legislative type of hearing, was required to make a record sufficient for the purpose of the particular judicial review. The sufficiency of the record depends upon the type of review. An administrative type of hearing may well follow a different procedure than a contested case. But in either case an interested person is entitled to due process and in the case of a contested case, to the fair play provisions of ch. 227.
*392 However, the objection relating to Mutual's offer of proof is predicated upon the reasoning that sec. 215.03 (9), Stats., relating to the establishment of a branch was applicable and the question of public interest was in issue. We have decided this view was not correct. The review was very limited and since there was no dispute as to the evidentiary facts relating to distances, only legal questions were involved. Nevertheless, the commissioner should not be present when the advisory board is considering and deciding a review involving his act or decision, and neither should a member, who has not heard the evidence, vote upon it. However, in view of the limited issue presented, such violations of fair play were not prejudicial.
By the Court.Judgment affirmed.
NOTES
[*] Motion for rehearing denied, with costs, on June 4, 1968.
[1] "(b) Subject to the approval of the commissioner, savings and loans in counties having a population of 500,000 or more may establish and maintain branches and they may purchase or consolidate with other savings and loans and convert such savings and loans into branches within such counties, or within 20 miles of the parent savings and loans in each case if county lines intervene, but no branch savings and loan may be established within one mile of an existing home savings and loan office."
[2] "REVIEW OF GRIEVANCES, ORDERS OR DETERMINATIONS. Any interested person or any association aggrieved by any act, order or determination of the commissioner, which relates to savings and loan associations may, within 20 days from the date thereof, apply to the advisory committee to review the action of the commissioner. Such applications shall be considered and disposed of as speedily as possible."