IN MATTER OF ESTATE OF Eric TRESSING, a/k/a Eric J. Tressing, Deceased: OAK PARK TRUST & SAVINGS BANK, Ancillary Personal Representative, and others, Respondents, v. Esther P. TRESSING, Appellant.

Supreme Court

*No. 76–165. Argued October 30, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 271.)

For the appellant there was a brief and oral argument by *Clyde M. Paust* of Milwaukee.

There was a joint brief by *William L. Seymour* and *Lehman, Seymour & Kremer* of Elkhorn, for Oak Park Trust & Savings Bank; and *Alice P. Morrissy* and *Morrissy, Morrissy & Race* of Elkhorn, for Josephine M. Tressing, Lawrence T. Crown and Sally Crown, with oral argument by *William L. Seymour.*

DAY, J.   This is an appeal from a judgment of the county court of Walworth county, the Honorable John D. Voss, presiding, entered July 30, 1976, which determined that the deceased was domiciled in Riviera Beach, Florida at the time of his death which we affirm.  The appeal is also taken from the order granting ancillary probate of the estate and issuing ancillary letters to Oak Park Trust and Savings Bank of Oak Park, Illinois.  We affirm that part of the order allowing ancillary probate of the will of the deceased but reverse that part of the order naming Oak Park Trust and Savings Bank as ancillary personal representative and remand for further proceedings.

The principal question raised on this appeal is whether the finding of the trial court that the deceased, Eric Tressing, was domiciled in the state of Florida at the time of his death is against the great weight and clear preponderance of the evidence. We hold such finding is not against the great weight and clear preponderance of the evidence and accordingly we affirm the judgment declaring him to be such a resident.

The second question is whether or not the order granting ancillary rather than primary probate was proper? We hold that it was.

The third question is whether the court abused its discretion in naming the Oak Park Trust and Savings Bank as ancillary personal representative. Because the court made no specific findings as to why the widow, Mrs. Esther P. Tressing should not have been named co-ancillary personal representative along with the First National Bank and Trust Company of Riviera Beach, Florida as nominated in the will of the deceased we reverse that portion of the order and send the matter back to the trial court for further proceedings.

The issues presented here arose when Esther P. Tressing, widow of the deceased filed a petition on February 10, 1976 for intestate administration (with attached copy of will and codicil) and for will and codicil to be admitted to probate if produced at time of hearing and requesting that letters be issued to her as personal representative. Oak Park Trust and Savings Bank filed an objection to the issuance of such letters and in turn petitioned that letters of ancillary administration be issued to it. The petition by Esther Tressing alleged that the deceased was domiciled in Wisconsin at the time of death whereas the petition of the Oak Park Trust and Savings Bank alleged the deceased was domiciled in Florida at the time of death. The court after taking testimony denied both of her requests and issued an order for

ancillary probate naming the Oak Park Trust and Savings Bank as ancillary personal representative. The court made fourteen findings of fact in support of its ruling that the deceased at the time of death was a Florida domiciliary. The court said

". . . the court does conclude that the deceased attempted to and succeeded in changing his domicile and legal residence from Wisconsin to Florida in 1972 for the following reasons: . . ."

There then followed the fourteen specific findings that the deceased prior to death (1) made two declarations of domicile in Florida dated March 1, 1972 and November 6, 1972; (2) voted in Florida in 1972; (3) leased an apartment in Florida on an annual basis from March 1, 1972 until the time of his death which lease was still in effect the date of trial, March 27, 1976; (4) made two wills and one codicil commencing "I, Eric J. Tressing of the county of Palm Beach in state of Florida do hereby, make public and declare" etc.; (5) registered his personal automobile in Florida; (6) had a Florida's driver's license; (7) established a bank account in Florida; (8) procured a safety deposit box in Florida; (9) the death certificate gave his Florida address; (10) notified his accountant and his attorney of change of permanent residence; (11) his Federal Income Tax returns bore the Florida address and were filed in Georgia, the proper place for filing such Florida returns; (12) never had a bank account in Wisconsin and named no Wisconsin charities in his wills; (13) transferred his Blue Cross and Blue Shield insurance to Jacksonville, Florida; (14) ". . . almost all of the foregoing were admitted by his widow on cross-examination."

The court in its decision of July 19, 1976 noted the arguments of Mrs. Tressing that the decedent was a Wisconsin resident and that the deceased (1) did not file

tax return on tangible property in Florida; (2) maintained a telephone credit card with the Lake Geneva, Wisconsin address and at all times from 1966 to date of death was listed in the Lake Geneva telephone directory; (3) maintained a Lake Geneva Sentry "courtesy check-cashing card"; (4) continued his membership in the American Association of Retired Persons with his Lake Geneva address; (5) maintained his various Lake Geneva area fraternal memberships through 1975; (6) in 1972, rented an automobile in Florida and on the rental contract showed his home address to be Lake Geneva and also his Wisconsin driver's license number; (7) renewed his American Economy insurance policy dated December 4, 1972 giving Lake Geneva as his address; (8) the tax forms of the deceased were mailed to him at his Lake Geneva address (although the tax forms, themselves, showed his Florida address); (9) deceased's Illinois attorney corresponded with deceased at Lake Geneva on important trust matters; (10) the Oak Park Trust and Savings Bank checking accounts dealt with him as a Lake Geneva resident since 1972; (11) various medical bills and statements were directed to the Lake Geneva address; (12) a Pfizer stock certificate dated January 26, 1973 showed his address to be Lake Geneva; (13) various drug receipts and miscellaneous statements were introduced showing the Lake Geneva address.

The standard for review that this court must apply in reviewing trial court findings is strict. The fact that this court might have reached a different conclusion in a given case by its own balancing of the inferences and possible conclusions to be drawn from evidence presented is not the standard to be applied. Two trial courts faced with identical conflicting evidence may reach opposite conclusions. Yet it could be said that neither court's findings was in fact against the great weight and clear preponderance of the evidence.

Seventy years ago this court in *Ott v. Boring,* 139 Wis. 403, 407, 121 N.W. 126 (1909) said:

"Hence the rule that there must not only be a preponderance of evidence against such determination, but there must be a clear preponderance. The significance of the word 'clear' is not always fully appreciated. Manifestly, that requires the preponderance to be so apparent as to manifestly outweigh any probable legitimate influence upon the triers of those advantages for discovering the truth which the reviewing tribunal cannot have. . ."

This court has repeatedly said that findings of fact by the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *In re Estate of Taylor,* 81 Wis.2d 687, 696, 260 N.W.2d 803 (1978). To command reversal, such evidence and support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis.2d 607, 611, 615, 247 N.W.2d 168 (1976).

Eric Tressing, the deceased, and his wife Esther Tressing, the appellant in this case, were married in 1957. In 1966, the Tressings moved from Illinois to Lake Geneva, Wisconsin where the deceased owned a 220 acre farm. They lived in a modern ranch style house on the farm. There was another dwelling on the farm which was sometimes occupied by tenants. Mr. Tressing participated in some of the farm work, although there was a dispute in the testimony as to the extent of such involvement and the skill exercised when it was done. The Tressings socialized with family and friends in that area and Mr. Tressing was active in a fraternal organization.

In 1967, the Tressings established a pattern of traveling to Florida for the winter months and this pattern

continued until close to Mr. Tressing's death. They usually left Wisconsin in late December, although in 1972, they did not make the trip until February. They would return to Wisconsin in late April. For several years they would stay in a motel until they found a furnished apartment for their stay in Florida. Dissatisfaction with these arrangements resulted in leasing a two bedroom unfurnished apartment on an annual basis in 1972. At about this time Mr. Tressing advised his wife he wanted to establish Florida residency. She testified she had no interest in becoming a Florida resident and asked him how he could do that since he had a home in Wisconsin and a farm here. His reply was to the effect that he knew what he was doing and to let him handle it. Other facts with regard to Mr. Tressing's activities between Florida and Wisconsin are set forth above from the findings of the trial court.

In April, 1973, Mr. Tressing became ill. Upon returning from Florida, he went to Chicago for medical help and received a diagnosis that he was suffering from a brain tumor. He underwent surgery in Chicago, and after two and one-half months of convalescence he returned to Lake Geneva with Mrs. Tressing in August, 1973. In late December, 1973, the Tressings went as usual to Florida and returned in April, 1974. They made their final trip to Florida in December, 1974, and returned in April, 1975. In September, 1975, Mr. Tressing's health began to fail. He was again hospitalized in Chicago for a month beginning October 10th, he then went to Lake Geneva for approximately a month and then returned to Illinois and entered a nursing home in December. He died at the nursing home on January 21, 1976. The death certificate, signed by Mrs. Tressing, showed Mr. Tressing's address as Florida though Mrs. Tressing testified that her daughter was the one who supplied the address for that certificate.

In *Estate of Daniels*, 53 Wis.2d 611, 193 N.W.2d 847 (1972), this court said "where two homes are owned, domicile is determined by intention and physical acts are considered to express which residence is to be considered the permanent home as the domicile." This was a modification from the earlier rule as expressed in *Will of Eaton*, 186 Wis. 124, 133, 202 N.W. 309 (1925) where the court held that once a domicile is established it is not lost until a new one is acquired and that where an actual domicile has been established, two things are necessary to create a new domicile, "first, an abandonment of the old domicile, and second, the intention and establishment of a new domicile. . ."

In this time of great mobility of our population a residence may be owned in more than one state and ownership is not the prime requirement. Whether it is ownership or rental of a condominium or ownership of a mobile home parked on a rented area in a trailer park, the mere fact that a fee simple interest in residential property may exist in another jurisdiction is not determinative of whether a new domicile has been established. Particularly in retirement years people may have more than one place where they reside for a greater or lesser part of the year and whether they follow the sun or follow the snow, the place of physical habitation and the nature of the relationship to it, whether owned or leased, is only one of the indicia of residence along with others that establishes where the domicile of one may be for tax purposes. From an examination of the fourteen points relied on by the trial court in concluding that domicile was in Florida compared to the thirteen points raised by the widow and cited by the judge in his opinion in arguing for a finding of Wisconsin domicile, this court cannot say that the conclusion of the trial judge is

against the greater weight and clear preponderance of the evidence.

The second question is did the trial court abuse its discretion in granting ancillary probate instead of primary probate, or as Esther Tressing's brief refers to it, "original" probate.

We conclude that the trial court acted properly within its discretion in granting ancillary probate. Wisconsin has adopted the Uniform Probate of Foreign Wills Act as sec. 868.01, Stats. (1975). In pertinent part, it provides:

". . . (5) ORIGINAL PROBATE; WHEN ALLOWED. Original probate of the will of a testator who died domiciled outside this state, which upon probate may operate upon any property in this state and is valid under the laws of this state, may be granted if the will does not stand rejected from probate or establishment in the jurisdiction where the testator died domiciled, or stands rejected from probate or establishment in the jurisdiction where the testator died domiciled solely for a cause which is not ground for rejection of a will of a testator who died domiciled in this state. The court may delay passing on the application for probate under this subsection pending the result of probate or establishment or contest at the domicile or on the application for probate under sub. (1).

"(6) PROOF OF WILL BY PROBATE IN NONDOMICILIARY JURISDICTION. If a testator dies domiciled outside this state, an authenticated copy of his will and of the probate or establishment thereof in a jurisdiction other than the one in which he died domiciled shall be sufficient proof of the contents and legal sufficiency of the will to authorize the admission of the will to probate under sub. (5), if no objection is made thereto. This subsection does not authorize the probate of any will which would not be admissible to probate under sub. (5), nor, in case objection is made to the will, to relieve proponent from offering proof of the contents and legal sufficiency of the will except that the original will need not be produced unless the court so orders."

The will of Mr. Tressing was admitted in Illinois which no one in this lawsuit claims was his domicile. We conclude that sub. (6) of sec. 868.01, Stats. applies. The Commissioners Note to sub. (6), 8 Uniform Laws Annotated, p. 601 comments:

"This section is designed simply to facilitate proof in case that the only prior probate is in another ancillary jurisdiction and there is no objection to the will. It permits the court to dispense with the production of the original even if objection is made to the will. However, probate in another ancillary jurisdiction has only prima facie effect and a local contest is permitted. Compare sections 1, 2 and 3 where the prior probate is at the domicile."

Sub. (6) refers the reader back to sub. (5). This section is explained in MacDonald, *Wisconsin Probate Law,* Vol. 1, pp. 101–102 (1972):

"There can be no question but that the proper place for original probate is at the domicile of the testator, wherever that may be, and it was accordingly considered that the will should only be admitted to probate in Wisconsin after probate at the place of domicile, as a 'foreign' will, upon the record of probate at the place of domicile, in accordance with the statutes relating to probate of foreign wills. Under the statutes, however, [sec. 868.01(5)], the Wisconsin court may admit the will to probate if it is valid under the laws of this state and does not stand rejected in the state where the testator died domiciled. If it is rejected in that state solely for a cause which is not ground for rejection in Wisconsin it may be granted original probate in Wisconsin. Having admitted the will to probate the Wisconsin court may proceed as with an original administration as to both real and personal property within the county until such time as the will is probated and representatives are appointed at the domicile; after which remaining personalty may be transferred to the domiciliary repre-

sentatives and the subsequent Wisconsin administration handled as an ancillary administration."[1]

"Original probate" as used in sec. 868.01(5), Stats. is not the equivalent of domiciliary or primary probate; rather, it is an ancillary proceeding since it applies by its own terms to testators who die domiciled in states other than Wisconsin. As used in secs. 868.01(5) and (6), "original probate" means first in time. Thus, Wisconsin courts may act upon property located in the state, even though the will has not yet been admitted to probate in the state of domicile, provided other conditions of the statutes are met. This conclusion is underscored by the fact that the title of Chapter 868 is "Ancillary Procedures."

Mr. Tressing's will was admitted to probate in Illinois and that admission is not being contested. Sec. 868.03 (3), Stats. provides that the court may deny the application for ancillary letters if it appears that the estate may be settled conveniently without ancillary administration. However, there is Wisconsin property involved in this case, and the trial court properly found that ancillary probate was necessary.

The third question is did the trial court abuse its discretion when it named the Oak Park Trust and Savings Bank as ancillary executor.

Sec. 868.03(2), Stats. (1975) provides:

"868.03. **Uniform Ancillary Administration of Estates Act.** . . . (2) APPLICATION FOR ANCILLARY LETTERS AND NOTICE THEREOF. Qualifications of and preference for foreign representative. Any foreign representative upon the filing of an authenticated copy of the domi-

[1] The last sentence refers to *Estate of Joyce,* 238 Wis. 370, 298 N.W. 579 (1941) in which it was held that Wisconsin had original jurisdiction over real and personal property located in the state belonging to a Texas resident, until probate proceedings began in the state of domicile.

ciliary letters with the probate court may be granted ancillary letters in this state notwithstanding that the representative is a nonresident of this state or is a foreign corporation. If the foreign representative is a foreign corporation it need not qualify under any other law of this state to authorize it to act as local and foreign representative in the particular estate if it complies with subs. (4) and (5). If application is made for the issuance of ancillary letters to the foreign representatives, the court shall give preference in appointment to the foreign representative unless the court finds that it will not be for the best interests of the estate or the decedent has otherwise directed."

"Foreign representative" is defined at 868.03 (1) (b) as "any representative who has been appointed by the court of another jurisdiction in which the decedent was domiciled at the time of his death, or in which the ward is domiciled, and who has not also been appointed by a court of this state."

Mr. Tressing was domiciled in Florida when he died, not Illinois. Oak Park was appointed executor in Illinois. The briefs indicate that the will has not been offered for probate in Florida. Thus, Oak Park is not entitled to preference under sec. 868.01(2), because it does not meet the statutory definition of a foreign representative and because Mr. Tressing did, in fact, direct otherwise.

Mr. Tressing's will provided for the appointment of an executor as follows:

"I hereby nominate and appoint the FIRST NATIONAL BANK AND TRUST COMPANY OF RIVIERA BEACH, FLORIDA, and my wife, ESTHER CARLIN TRESSING, as joint Executors of this my Last Will and Testament and direct that no security or surety be required on any bond of my wife as said Executor or co-Executor. Should ancillary administration of my estate be required in any jurisdiction in which the above Executors, or either of them, shall be unable or authorized to act, then

I name as Ancillary Executor the OAK PARK TRUST & SAVINGS BANK, an Illinois corporation, of Oak Park, Illinois."

The will merely stated that Oak Park should serve as ancillary executor, if either of the joint executors were unable to serve. The trial court made no finding as to the suitability or authority of Mrs. Tressing or the Florida bank to serve.

The respondents assert that Mrs. Tressing has a conflict with the residuary legatees of the estate. Mr. Tressing's will leaves the residue of the estate to an inter vivos trust with Oak Park Trust and Savings Bank as the trustee. The beneficiaries of the trust are Lawrence T. Crown, Sally Crown, Josephine Tressing, the testator's sister, and some Illinois charities.

The trust agreement provides in Paragraph B of Schedule A, inter alia, that the trust (and therefore the residue) will pay all death taxes. The respondents argue that because Mrs. Tressing has provided the Wisconsin Department of Revenue with information that her husband was a Wisconsin resident, she has acted the part of "informer" and has subjected the estate to the potential of higher tax liability. Thus, they submit that her interests are antagonistic to those of the residuary legatees.

A person who has a conflict of interest should not serve as an executor or administrator. *Estate of Bartz,* 207 Wis. 639, 242 N.W. 171 (1932); *Estate of Dunlap,* 184 Wis. 345, 199 N.W. 387 (1924).

"The paramount object and purpose of our statute, and of all statutes, in fixing the order of preference in which letters of administration shall be granted, is to secure to those having a beneficial interest in the property to be administered upon the right to administer. It is to be supposed that those who will reap the benefit

of a wise, speedy, economical administration of the estate, or, on the other hand, suffer the consequence of waste, improvidence, or mismanagement, have the highest interest and most influential motive to administer the property correctly. The right to administer follows the right to the personal property." *Estate of Bartz, supra* at 643.

The respondents argue that because Mrs. Tressing is not a residuary legatee, she has no interest in the ancillary administration, and that moreover, she is hostile to the residuary legatees. However, Mrs. Tressing was left real and personal property in the State of Wisconsin which would be the subject of ancillary administration, so she does have an interest in the property to be administered.

Nothing in the record before us establishes that Mrs. Tressing would not administer the estate fairly either in primary or ancillary proceedings. Her insistence that her late husband was a Wisconsin domiciliary does not make her an "informer" in a pejorative sense. She would not be disqualified as personal representative merely because she has honestly set forth her conclusions for which there is considerable factual support. We conclude, therefore, that the portion of the court's order in naming the Oak Park Trust and Savings Bank as ancillary personal representative must be reversed and the case remanded to the trial court for a hearing and findings on the availability and suitability of the Florida bank and Mrs. Tressing to act as the ancillary personal representatives in accordance with the wishes of the testator as expressed in his will.

*By the Court.*—Judgment affirmed. Order affirmed in part and reversed in part and remanded for further proceedings.