HUFF & MORSE, INC., a Wisconsin corporation,
Plaintiff-Respondent,

v.

Frank RIORDON, d/b/a Der Boathaus,
Defendant-Appellant.

Court of Appeals

*No. 83–155. Argued November 30, 1983.—
Decided February 1, 1984.*
(Also reported in 345 N.W.2d 504.)

2

For the defendant-appellant, there were briefs and oral argument by *Richard W. Torhorst* of Lake Geneva.

For the plaintiff-respondent, there were briefs and oral argument by *Edward F. Thompson* of *Hammett, Williams, Riemer & Thompson* of Delavan.

There was an amicus curiae brief and oral arguments by *William C. Wolford,* assistant attorney general.

Before Scott, C.J., Brown, P.J., Robert W. Hansen, Reserve Judge.

BROWN, P.J.   Frank Riordon appeals from the trial court's decision that he owes $1,504.94 to Huff and Morse, Inc., a service station and auto repair shop in Delavan.  Riordon claims that the shop cannot collect for repairs to his 1970 Ford truck because it failed to comply with the written estimate requirement in Wis. Adm. Code, ch. Ag 132.  He also makes a similar argument regarding repairs to his 1974 Pontiac.  We hold the shop did indeed fail to comply with the requirement.  As such, the underlying contracts are invalid as a matter of law.  We also hold, however, that because the record indicates Riordon orally authorized the repair work, the shop is entitled to recover on *quantum meruit* grounds.

Wisconsin Administrative Code, ch. Ag 132 was promulgated to attack the abuses occurring in the motor vehicle repair industry.  In order to prevent unauthorized repairs from being performed and charged to a customer, sec. Ag 132.02 states in pertinent part:

Prior to the commencement of any repairs whose price to the customer may exceed $25.00, the shop shall provide the customer with a copy of a dated written repair order legibly describing the repairs to be performed; except that such copy need not be provided if the customer's motor vehicle has been brought to the shop without face-to-face contact between the customer and a representative of the shop.

There is no case in Wisconsin that has defined or interpreted this language. Construction of administrative rules is governed by the same principles that apply to statutes. *Basinas v. State,* 104 Wis. 2d 539, 546, 312 N.W. 2d 483, 486 (1981). The interpretation by an agency of its own administrative regulation is entitled to controlling weight, unless it is inconsistent with the language of the regulation or is clearly erroneous. *Beal v. First Federal Savings & Loan Association of Madison,* 90 Wis. 2d 171, 183, 279 N.W.2d 693, 698 (1979). *Beal* is largely inapposite here, however, because the Department of Agriculture has offered little interpretation of the precise issues presented. Thus, construction will be, for the most part, without benefit of agency interpretation.

The construction of a statute is a question of law. *Kluenker v. Department of Transportation,* 109 Wis. 2d 602, 605, 327 N.W.2d 145, 147 (Ct. App. 1982). So, likewise, is construction of an administrative rule. Our principal aim is to achieve a construction which will effectuate the purpose of the rule. *State ex rel. Melentowich v. Klink,* 108 Wis. 2d 374, 380, 321 N.W.2d 272, 275 (1982). We will reject an unreasonable construction where a reasonable construction is possible. *Alberti v. City of Whitewater,* 109 Wis. 2d 592, 601, 327 N.W.2d 150, 154 (Ct. App. 1982). The court may enlarge or restrict the meaning of a word in a statute to harmonize it with the manifest intent of the entire section. *Mutual*

*Federal Savings & Loan Association of Milwaukee v. Savings & Loan Advisory Committee,* 38 Wis. 2d 381, 387, 157 N.W.2d 609, 612 (1968). Thus, where one of several interpretations of a statute is possible, the court may determine the scope of the term by its context in a particular instance. *See Wisconsin's Environmental Decade, Inc. v. Department of Natural Resources,* 85 Wis. 2d 518, 528–29, 271 N.W.2d 69, 73–74 (1978). Finally, in determining which of several interpretations is correct, we may consider material extrinsic to the code itself, such as comments of nonlegislative committees. *In re Estate of Haese,* 80 Wis. 2d 285, 297, 259 N.W.2d 54, 59 (1977). We now turn to the facts.

Riordon brought his truck into the shop in June of 1980. Originally, the purpose of the appointment was to increase the oil pressure and put in an oil pump, but by the time the truck was brought in, there was also a "ticking" noise in the engine. Riordon and one Mr. Morse, on behalf of the shop, discussed the problem. Morse said he would "check into it" and get back to Riordon. No written estimate was provided.[1] Several telephone conversations occurred while the truck was being repaired, with Morse informing Riordon of the general progress he was making. When the work was completed, Riordon's wife picked up the truck and wrote out a check for $1,504.94. When his wife got home, she contacted Riordon, who was out of town, and informed him that the "ticking" noise still existed. Riordon then stopped payment on the check.

The shop instituted this action to collect the $1,504.94. Riordon answered, raising as a defense the shop's failure to comply with Wis. Adm. Code, ch. Ag 132. Judgment

---

[1] It is undisputed that the shop failed to give Riordon a written estimate before commencing repair on the Ford truck.

was granted in favor of the shop. The facts involving the 1974 Pontiac will be discussed later.

Wisconsin Administrative Code, sec. Ag 132.02 clearly states that a shop shall provide the customer with a copy of a dated written repair order legibly describing the repairs to be performed. The shop makes three arguments in its attempt to excuse its failure to provide a choice of written estimate alternatives.[2] First, it claims that no one follows the law anyway and that it is a custom of the trade to ignore the code. That argument is meritless. Second, it argues that the work to be performed was "diagnostic" and that a price could not be given until the exact nature of the mechanical difficulty was ascertained. The shop asserts that because it did not charge for the diagnosis, a written estimate is not required. It correctly points out that a written estimate is only required in those instances where repairs exceed $25. We also reject this argument summarily. The record indicates that the Ford truck was originally brought in because of a problem of low oil pressure. At the initial face-to-face contact, Morse, on behalf of the

---

[2] When there is an initial face-to-face contact, a price quotation or written estimate alternative form is required to be given to the customer. The required language for a choice of estimate alternatives under Wis. Adm. Code, sec. Ag 132.03 (3) is as follows:

YOU ARE ENTITLED TO A PRICE ESTIMATE FOR THE REPAIRS YOU HAVE AUTHORIZED. THE REPAIR PRICE MAY BE LESS THAN THE ESTIMATE, BUT WILL NOT EXCEED THE ESTIMATE WITHOUT YOUR PERMISSION. YOUR SIGNATURE WILL INDICATE YOUR ESTIMATE SELECTION.

1. I request an estimate in writing before you begin repairs.

2. Please proceed with repairs, but call me before continuing if the price will exceed $————.

3. I do not want an estimate.

It is during the initial face-to-face contact that the shop is required to give this choice of estimate alternatives.

shop, suggested that he put in rod bearings to help increase the oil pressure. Riordon and the shop agreed to "go ahead with the oil pump and rod bearings" and to "check into" the engine noise. The shop was therefore required to give written estimate alternatives, at least for the agreed upon oil pump work.[3]

The shop's third and final argument meets a similar fate. The shop directs our attention to Wis. Adm. Code, sec. Ag 132.04. Section Ag 132.04(1) provides as follows:

*Authorization to Proceed.* (1) Before undertaking any repairs other than those previously authorized by the customer, the shop shall call the customer and provide him with a description of the proposed additional repairs, together with a good faith estimate of the price for such repairs. The shop shall not then undertake the additional repairs until it receives the customer's written or oral authorization to do so.

The shop claims that sec. Ag 132.04(1) excuses it from having to provide a written estimate. The shop claims that it was impossible for it to provide a written estimate during the initial face-to-face contact because the engine still had to be disassembled and the problem had to be diagnosed. Because Riordon traveled a great deal and was hard to reach, the shop, as an accommodation to Riordon, called when the diagnosis was complete and received oral authorization to do the work. The shop

---

[3] The shop could easily have given a choice of estimate alternatives even under the facts as the shop claims them to be. If the cost was unknown, it would have been a simple task to suggest that Riordon sign estimate alternative No. 2, indicating that the shop could proceed with the repairs but to call before continuing if the price exceeded zero dollars. That way, a choice of estimate alternatives would have been provided, thus satisfying Wis. Adm. Code, ch. Ag 132. Then, the diagnosis could have been done, and any subsequent update could have been handled either orally or in writing pursuant to sec. Ag 132.04.

claims that under sec. Ag 132.04 it can get an oral authorization in lieu of a written one.

The problem with this argument is that there was an initial face-to-face contact between the customer and the shop. When there is an initial face-to-face contact, one of the written estimate alternatives is required. Section Ag 132.04 allows oral authorizations for *additional* repairs only. It does not take the place of the initial written authorization which must be given during the face-to-face contact between the customer and the shop. We conclude that the shop failed to provide a written estimate in accordance with sec. Ag 132.02.

Having determined that the shop failed to provide a written choice of estimate alternatives to Riordon, we must still determine what effect this violation has on the transaction. Riordon claims Wis. Adm. Code, sec. Ag 132.07 (2) (a), provides an absolute penalty. The penalty is that the contract is invalid, and the shop shall not be able to collect for repairs. We agree that the contract is invalid and that the shop may not collect under it. We disagree that the shop is precluded from collecting under any other legal theory.

Wisconsin Administrative Code, sec. Ag 132.07 (2) (a), states that, "No shop shall collect or attempt to collect for: (a) Repairs not authorized either orally or in writing by the customer." Riordan reads this section to prohibit payment for any repair work unless the oral or written authorization given by the customer complies with each and every technical prerequisite under the code. In other words, he reads "not authorized" to mean an "unlawful" or "illegal" method of obtaining consent. Therefore, a shop and a customer may agree on repairs, and repairs may be made as requested. If, however, the

form of consent given is not the type permitted by the code, then a shop may not attempt collection.

That reading loses sight of the major purpose behind Wis. Adm. Code, ch. Ag 132, which is to prevent *uncommissioned* repairs from being performed by repair shops. Shops which obtain consent to proceed on specific repair work have been commissioned to do so. The code was promulgated to prevent shops from proceeding with repairs unless they have received permission to do so. To read sec. Ag 132.07(2)(a) as Riordon would have us read it would allow *every* customer finding a violation of the written estimate requirement to be exempt from paying even if the customer admits consenting to the repairs. This would lead to a result not contemplated by the drafters of the code. The attorney general, in fact, argues that the severe result of nonpayment was intended to apply *only* to those incidents in which shops perform *uncommissioned* repairs.

We also cite an informational bulletin prepared by the Department of Agriculture, Trade and Consumer Protection, the agency primarily responsible for the regulation. The department wrote:

The shop shall not do any work which has not been authorized *by the customer*. This subsection applies to all repair work, regardless of the price of the repairs, and regardless of whether there has been face-to-face contact between the customer and a representative of the shop.

Department of Agriculture, Trade and Consumer Protection, Informational Bulletin on ch. Ag 132: Motor Vehicle Repair at 3 (June 16, 1975) (emphasis added). In the context in which it is written, the meaning of the sentence is to caution shops not to do any work unless they first obtain the customer's consent. If this section were construed the way Riordon wished, it would have read that a shop will not do any work which has not been authorized *by the code*. We conclude that the department

and this court have the same interpretation of the term "authorized."

The attorney general suggests that Wis. Adm. Code, sec. Ag 132.07 (2) (a) means: First, failure to comply with the administrative prerequisites invalidates the oral contract as a matter of law. *Perma-Stone Corp. v. Merkel,* 255 Wis. 565, 570–71, 39 N.W.2d 730, 733 (1949). Second, under Wisconsin law, any recovery on the part of the shop is therefore restricted to *quantum meruit.* Third, even *quantum meruit* is prohibited unless the customer has first consented to the specific repair. We adopt the attorney general's analysis.

The Wisconsin Supreme Court reached this result in a similar action involving home improvement contractors who are also subject to administrative code regulations. In *Zbichorski v. Thomas,* 10 Wis. 2d 625, 103 N.W.2d 536 (1960), a contractor allegedly violated a Department of Agriculture order providing that roofing and siding contracts be in writing and that an accurate copy be left with the customer. The court in assessing the rights of both parties stated:

In addition . . . defendant was not entitled to a summary judgment because even if the contract is governed by the regulation and is illegal as claimed by the defendant, the plaintiff will be entitled to recover on his alternative cause of action based on *quantum meruit.*

*Id.* at 628, 103 N.W.2d at 537.

*Thomas* is support for our holding that a violation of a code provision will result in an invalid contract, and the shop may only recover the reasonable value of services provided under a *quantum meruit* claim. We distinguish *Thomas* only in that under Wis. Adm. Code, sec. Ag 132.07 (2) (a), *quantum meruit* recovery cannot exceed the original amount agreed upon. To allow recovery for an amount in excess of the authorization would be to

allow recovery for unauthorized repairs. In situations where the repairs are not authorized, collection under any legal theory is prohibited.

We do not believe that *quantum meruit* recovery emasculates the purpose behind Wis. Adm. Code, ch. Ag 132. First, as we have already indicated, there can be no recovery for unauthorized repairs. Second, in order to prove *quantum meruit,* a shop will be required to incur the costs of litigation, oftentimes including expert testimony, to establish what the services are reasonably worth. A shop can avoid the consequences of having to seek *quantum meruit* recovery by adhering to the technical aspects of ch. Ag 132. Therefore, it is envisioned that the litigation costs would act as a deterrent.

The record of this case shows that a violation of Wis. Adm. Code, sec. Ag 132.02 occurred when the repair shop failed to give Riordon a written estimate during the initial face-to-face contact. The trial court did find, however, that telephone conversations took place throughout the repair period. In these conversations, Riordon authorized at least $1,000 of repairs, even though the exact procedures required by ch. Ag 132 were not followed. Nothing has been said as to whether the remaining $509.94 was authorized or unauthorized by Riordon. This is important to resolving the case at hand. If the $509.94 was unauthorized, then under our holding, the shop may not collect the *quantum meruit* value of that work. We therefore remand the case, first, for a determination by the trial court on whether the remaining $509.94 was authorized. Then, the trial court must hear evidence on the entire claim for the purpose of determining the *quantum meruit* value of the work authorized.

Still to be discussed is the question of double damages. Section 100.20(5), Stats., states that a customer suffer-

ing "pecuniary loss because of a violation by any other person of any order" is eligible to recover twice the amount of such loss. Riordon claims double damages. Because of our foregoing analysis, however, Riordon cannot collect double damages on his claim involving the $1,509.94 for the repair of the Ford truck. This is because $1,000 of that repair was permitted. Thus, he has not suffered pecuniary loss because of a violation of an order. As to the $509.94 which is left, that amount may have been unauthorized. That, as we said, is up to the trial court to determine. Because he cancelled the check, however, Riordon cannot claim pecuniary loss for having paid the repair bill. Whether any other type of pecuniary loss can be considered is not before us.

We now reach that part of the case involving the 1974 Pontiac. Prior to the Ford truck dispute, Riordon had brought a Pontiac to the shop for engine repair work. No written estimate was provided at the initial contact. Riordon left the shop and received a call later in the day giving an estimate for the work to be performed. Several other telephone conversations took place at various stages of the repair. Ultimately, Riordon was charged and paid $1,214.03 for the work performed. Riordon claimed a violation of Wis. Adm. Code, ch. Ag 132. He also claimed double damages pursuant to sec. 100.20(5), Stats.

The trial court found that the Pontiac's repairs were orally authorized by Riordon. Therefore, it is apparent that we have a technical violation of the code, just as we did with the situation involving the Ford truck. The underlying contract is, therefore, invalid. The only difference between this incident and the one involving the Ford, however, is that the incident involving the Ford was one where Riordon did not pay anything. There, the action was begun by the shop against Riordon. In the incident involving the Pontiac, the action was begun by

the customer for restitution. In either case, a shop will have to prove the reasonable value of the services in *quantum meruit* if it has committed a technical violation of the code. It does not matter whether the customer paid for the services before the suit. We remand this issue for a determination of the reasonable value of the services rendered by the shop. If the *quantum meruit* recovery is less than the amount Riordon paid to the shop, he is entitled to reimbursement of the difference.

Finally, we address Riordon's counterclaim for defective workmanship on the vehicles. The trial court found that Riordon failed to show *causation* between the breakdown of the two vehicles and the shop's workmanship. We find the trial court's interpretation of the facts to be supported by credible evidence, and, therefore, we affirm this portion of the decision.

The trial court's findings of fact will not be upset on appeal unless they are against the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 249, 274 N.W.2d 647, 650 (1979). The fact that we might have reached a different conclusion in a given case by our own balancing of the inferences and possible conclusions is not the correct standard. *In re Estate of Tressing,* 86 Wis. 2d 502, 507, 273 N.W.2d 271, 274 (1979).

The evidence in this case indicates that both vehicles did not experience problems until approximately four months after each had been repaired. The Pontiac had been driven 800 miles in the interim and the Ford truck over 3,500 miles. The "throwing" of a connecting rod in each vehicle could easily have been caused by engine abuse or excessive speed, as the trial court indicated in its decision.

*By the Court.*—Judgment affirmed in part; reversed in part and remanded.