Scott A. Jagodzinski, Plaintiff-Respondent,

v.

Tom Jessup, Defendant-Third-Party Plaintiff-Appellant,

Yvonne Jessup, Defendant-Third-Party Plaintiff,

Beth Jagodzinski, a/k/a Beth Kwiatowski, Third-Party Defendant-Respondent.

Court of Appeals

*No. 97–0787. Submitted on briefs October 28, 1997.—Decided November 25, 1997.*

(Also reported in 572 N.W.2d 515.)

241

On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of *Jay M. Langkamp* of *Michael Ablan Law Firm, S.C.*, La Crosse.

On behalf of the plaintiff and third-party defen-
dant-respondents, the cause was submitted on the brief
of *Daniel T. Cveykus* of *Cveykus Law Office*, Wausau.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J.   Tom and Yvonne Jessup appeal a judg-
ment awarding $14,275.48 to Scott A. Jagodzinski for
work performed on the restoration of their 1957 Chev-
rolet. The Jessups contend that the trial court erred
first by determining that the restoration of a vehicle is
not a repair under the motor vehicle repair code and
second by confusing the amounts due them from
Jagodzinski for work not done and for work improperly
done on their vehicle. Because we conclude that the
restoration of a vehicle falls within the code and that
the trial court incorrectly calculated the amount due
the Jessups for Jagodzinski's defective workmanship,
we reverse the judgment and remand for a new trial.

This case arose when Jagodzinski brought suit
against the Jessups for failing to pay the costs of restor-
ing the Jessups' 1957 Chevrolet. Jagodzinksi had been
hired to restore part of the car but was to leave the
finishing work for Harold Louisiana, a restoring
specialist.

While Jagodzinski was working on the car, Louisi-
ana stopped by Jagodzinski's garage to examine it.
Louisiana told Jagodzinski that the rear panels had
bulges in them, but apparently this problem was not
remedied. Jagodzinski eventually sent the car to Loui-
siana's shop for finishing work as promised, and
prepared a final invoice for the Jessups with a balance
of $13,941.18. This amount was thereafter reduced by
$2,000 to reflect work that Jagodzinski was supposed
to have done but had instead left for Louisiana.

Once Louisiana received the car, he noted several defects in Jagodzinski's workmanship in addition to Jagodzinski's not having fixed the rear panels.[1] These defects required him to spend additional time on the car, leading to an increase in his bill. The Jessups then refused to pay Jagodzinski, who in turn sued them under a contract theory to recover the remaining amount of the final invoice and, alternatively, under an unjust enrichment theory. The Jessups counter-claimed, alleging that Jagodzinski's poor workmanship resulted in damages amounting to at least $40,000, and that Jagodzinski's violations of the code entitled them to twice the amount of the monetary loss incurred as well as court costs and reasonable attorney fees.

At trial, the court determined that the code was not applicable because the claim involved a restoration, not repairs. Next, the court found that a contract existed for the amount showing on Jagodzinski's final invoice in the sum of $22,541.18. Finally, the court concluded that the Jessups were entitled to recover for some of the defects in workmanship. It found that the $2,000 credit Jagodzinski had given the Jessups was reasonable in light of Louisiana's "somewhat confusing" billing practices, the questionable accuracy of some of his figures, and that the expense involved in repairing certain other defects would provide little benefit. Ultimately, the court entered judgment against the Jessups for $11,941.18, plus interest.[2] The Jessups appeal.

---

[1] Louisiana testified that the cost of fixing the rear panels would have been significantly less at the time he alerted Jagodzinski to the problem.

[2] This total amount reflects a payment of $8,600 which the Jessups had already paid to Jagodzinski.

We first address the Jessups' claim of error based upon the trial court's conclusion that the restoration of an automobile is not a repair under the code. This contention raises a question of law that we determine without deference to the trial court's determination. *Huff & Morris, Inc. v. Riordon*, 118 Wis. 2d 1, 4, 345 N.W.2d 504, 506 (Ct. App. 1984).

There is no dispute that the 1957 Chevrolet is a motor vehicle. *See* WIS. ADM. CODE § ATCP 132.01(7); § 340.01(35), STATS. What is disputed is whether a restoration constitutes a repair. The Jessups claim that the code applies because, if viewed one step at a time, each element of the restoration amounts to a repair. The final work invoice listed some thirty repairs, including fitting and welding quarter panels, installing the windshield, and painting. While Jagodzinski does not appear to dispute that each step taken falls under the code, he claims that the language specifically excludes restoration terminology, and that the intent of the code was to protect ordinary customers from abusive practices but not those who, like the Jessups, receive financial gains from the restoration of vehicles.

The code defines a repair to include the following:

(a)   The diagnosis of any defect or malfunction in a motor vehicle, or in a motor vehicle component, part or attached accessory.

(b)   The installation or removal of any motor vehicle component, part or accessory.

(c)   The improvement, adjustment, replacement, maintenance or servicing of any motor vehicle component or part, regardless of whether that component or part is attached to a motor vehicle at the time of repair.

(d)   The improvement, adjustment, replacement, maintenance or servicing of any accessory that is attached to a motor vehicle at the time of repair.

(e)   Tasks related to the preparation of a repair estimate or firm price quotation if the shop charges for preparing the repair estimate or firm price quotation.

WIS. ADM. CODE § ATCP 132.01(12).

We conclude that the restoration work falls within the definition of repairs under the code. First, as Jagodzinksi himself appears to recognize, the clear and unambiguous language of the code encompasses the work done by Jagodzinski on the Jessups' car. Second, there is nothing within the code to suggest that the repairs were meant to be excluded simply because they amounted to a "restoration." While one may sense that a distinction exists between the restoration of an antique automobile and the repair of an automobile used on an everyday basis, the code does not reflect that the Department of Agriculture, Trade & Consumer Protection intended to distinguish between these two procedures.

Finally, we see nothing in the public policy behind the code to support Jagodzinski's claim that its sole purpose was to protect those seeking to repair a vehicle for everyday use. As noted in *Riordon*, the purpose of the code was "to attack the abuses occurring in the motor vehicle repair industry." *Id.* at 3, 345 N.W.2d at 506. The code attempts to protect the public from unscrupulous mechanics and automobile repair people who could disadvantage their customer by illegal or sharp practices. In using such broad language to effectuate this purpose, the agency might well have sought

to protect individuals also seeking restoration, believing them to be equally at risk.

■

Jagodzinski's argument that the code was not intended to protect "well-informed car collectors" who "receive a financial gain" from the restoration is also not supported by the code's language. The code is broadly aimed at protecting "customers," and the definition of "customers" encompasses virtually all owners of motor vehicles, whether natural persons or corporations, regardless of their subjective knowledge of motor vehicles or their reasons for repairing them. WISCONSIN ADM. CODE § ATCP 132.01(2) states:

> "Customer" means a natural person, corporation or business entity that owns, operates or controls a motor vehicle that is the subject of a repair transaction. "Customer" includes a person who is authorized to act on the customer's behalf, or who acts on the customer's behalf with the customer's apparent authorization. "Customer" does not include a shop subcontracting a repair to another shop.

This language does not suggest that there was any intention to create a distinction between more or less sophisticated customers, and we are unwilling to create one. We therefore conclude that the trial court erred by determining the code did not apply, and remand this matter to the trial court with directions to apply the code to the present controversy.

The Jessups' second argument on appeal is that the trial court's determination that the $2,000 bill deduction was reasonable compensation for both errors in Jagodzinski's workmanship and for work not completed by him was clearly erroneous. The Jessups

argue that the court confused these two issues, and only compensated them for the work Jagodzinski did not complete instead of also compensating them for the costs of correcting Jagodzinski's defective workmanship. Jagodzinski argues that the trial court did not confuse the two issues, and that the $2,000 award was proper.

We review a trial court's findings of fact with deference, and will only reverse where they are clearly erroneous. Section 805.17(2), STATS. After reviewing the record, we conclude that the trial court's finding that $2,000 was sufficient compensation both for work that Jagodzinski failed to perform and for Jagodzinski's defective workmanship was based on a mistaken view of the facts and is therefore clearly erroneous.

■

The trial court reasoned that $2,000 was sufficient compensation for extra work Louisiana had to do on the Jessups' car based in large part on its finding that Louisiana's "somewhat confusing" bill only amounted to $4,200. This interpretation led the court to view the extra work due to defective workmanship as adding only $719 to Louisiana's original bill. This finding, however, is not borne out by the evidence. Louisiana's bill actually comes out to $9,071.72, a full $5,590.72 over the original bill. While it is certainly within the discretion of the trial court to award less than that amount as compensation for the Jessups, the court must do so under an accurate view of the facts. We therefore remand this issue for further proceedings.

We conclude that the trial court erred by failing to apply the motor vehicle repair code, and by awarding Jessup $2,000 as compensation for both work Jagodzinski neglected to do and for poor workmanship.

We therefore remand the case for proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.