[No. B021870. Second Dist., Div. Seven. Oct. 6, 1987.]

CHRISTINE BAGGETT, Plaintiff and Respondent, v.
HOUSING AUTHORITY OF THE CITY OF LOS ANGELES,
Defendant and Appellant.

384

COUNSEL

James K. Hahn, City Attorney, Pedro B. Echeverria, Assistant City Attorney, and Pamela E. Snowden, Deputy City Attorney, for Defendant and Appellant.

Paul E. Lee for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—The Housing Authority of the City of Los Angeles (Housing Authority) appeals from that part of a judgment granting a writ of mandate which ordered it to discontinue its interpretation and application of a federal regulation, promulgated by the United States Department of Housing and Urban Development (HUD), governing the period of time in which an eligible family must find suitable private housing and a landlord willing to rent to it under the rent assistance program established by section 8 (Section 8) of the United States Housing Act of 1937 (42 U.S.C. § 1437 et seq.), as amended by the Housing and Community Development Act of 1974.

The regulation in question is 24 Code of Federal Regulations section 882.209(d)(1) (1986), which provides: "The Certificate of Family Participation shall expire at the end of 60 days unless within that time the Family submits a Request for Lease Approval."

The Housing Authority had interpreted this regulation to mean that, even after a family had submitted a timely request for lease approval, the 60-day period of the certificate would continue to run its course and that, although the certificate would expire at the end of the 60-day period, the agency still had authority either to approve or disapprove the request for lease approval.

The Housing Authority claims on appeal that its interpretation of the regulation is reasonable. It contends the trial court improperly ruled that, from a fair reading of the regulation, the running of the 60-day period is tolled when a timely request for lease approval is submitted to the public housing agency and remains tolled until such time as the certificate holder is notified that the request has been approved or denied. For the reasons set forth below, we will affirm the judgment.

### FACTUAL BACKGROUND

The facts are not in dispute. The respondent, Christine Baggett, became an applicant for Section 8 rent assistance on August 23, 1984, when the Housing Authority, a public housing agency (PHA), having determined that she was eligible for the program, issued her a certificate of family participation. This certificate allowed her to find suitable housing and a landlord willing to rent to her.

On September 13, 1984, respondent and her prospective landlord submitted a request for lease approval to the Housing Authority. Although the

proposed lease was submitted some 21 days after the issuance of the certificate, the first 60-day period continued to run under the Housing Authority's interpretation and application of the pertinent regulation. At the time the 60-day period expired, the Housing Authority had not approved the lease. However, without any request from respondent, the Housing Authority unilaterally extended the eligibility period of respondent's certificate for an additional 60 days. On November 14, 1984, on the 87th day after the issuance of the certificate, the Housing Authority approved the request.

Prior to the expiration of the extension period, respondent notified the Housing Authority that she was vacating her existing residence and moving into the one which was the subject of the request for lease approval. Thereafter, on or about November 30, 1984, respondent did move to the new residence. However, on December 3, 1984, the prospective landlord declined to execute a lease with respondent or a contract with the Housing Authority and ousted respondent from the new residence. Respondent promptly notified the Housing Authority which advised respondent on December 28, 1984, that her certificate had expired.

The trial court determined that the Housing Authority had violated the pertinent regulations governing the life span of the certificate. It issued a peremptory writ of mandate which, among other things, ordered the Housing Authority to "[d]iscontinue the policy and practice of failing and refusing to toll the durational time of Section 8 existing rental housing subsidy program Certificates of Family Participation, and any extensions thereof, for all such periods of time commencing with the submission of a Request for Lease Approval by the certificate holder, until such time as the certificate holder is notified that the Request for Lease Approval has been approved or denied."

### Section 8 Program

In order to understand the issue raised by this appeal, a brief discussion of the Section 8 program is necessary. The Section 8 program provides housing assistance to low-income families. More specifically, it is a rent subsidy plan under which owners of existing private housing receive payments on behalf of low-income tenants. The program is financed by the federal government, regulated by HUD, and administered by local PHA's, such as the Housing Authority. (*Simmons* v. *Drew* (7th Cir. 1983) 716 F.2d 1160, 1161.)

Local public housing authorities enter the program by executing an annual contributions contract with HUD. (24 C.F.R. § 882.206 (1986).) This contract authorizes the local agencies to enter into leases with participating owners. Families seeking assistance must apply to a local authority for a certificate of family participation. (24 C.F.R. § 882.209(a), *supra*.) Once certified, the family must within 60 days find a landlord willing to rent to it, because the certificate expires 60 days from its issuance "unless within that time the Family submits a Request for Lease Approval." (24 C.F.R. § 882.209(d)(1), *supra*.) However, if the family is unable to locate housing within the first 60-day period, it may request from the PHA an extension of up to 60 days upon a showing of a reasonable effort to locate housing within the first 60 days. (24 C.F.R. § 882.209(d)(2), *supra*.) The PHA must then approve the proposed lease if it finds, after an inspection, that the dwelling to be leased is in a decent, safe, and sanitary condition and that the terms of the proposed lease conform with the requirements set forth in regulations issued by HUD. (24 C.F.R. § 882.209(k)(1), *supra*).) Finally, the lessor and family must sign the approved lease, and the PHA must sign a contract promising to pay the lessor a fixed percentage of the family's rent. (24 C.F.R. § 882.209(k)(2), *supra*.)

## DISCUSSION

The interpretation of a regulation, like the interpretation of a statute, is a question of law and, while an administrative agency's interpretation of its own regulation obviously deserves great weight, the ultimate resolution of such legal questions rests with the courts. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; *Wolfman* v. *Board of Trustees* (1983) 148 Cal.App.3d 787, 789 [196 Cal.Rptr. 395].)

To support its narrow interpretation of the regulation, the Housing Authority argues that "the Section 8 regulatory scheme explicitly contemplates that not all otherwise-eligible low-income persons will receive Section 8 rent subsidy payments, but only those who are able to satisfy all of the regulatory prerequisites within a limited time period." Moreover, "[i]n order to actually have Section 8 payments made on his or her behalf the regulations require that a person apply, be certified, locate acceptable housing and a willing landlord within 60 days." The Housing Authority further argues that its interpretation of the regulation "facilitates use of Section 8 Certificates by the largest number of needy people. The fact that more needy people could be served if the Section 8 program were configured

differently and/or its regulations interpreted in a different way should not be a point of decision for this court."

The Housing Authority makes the point that "[i]t is not the role of the courts to interpret regulations . . . to achieve a more desirable social policy." We stress that it is likewise not the role of local housing agencies to interpret federal regulations to achieve the social policy of the local housing agency. Rather, it should be the role of both the courts and administrative agencies to interpret statutes and regulations according to the intent of their authors.

The Section 8 program is "financed by the federal government, *regulated by HUD,* and administered by state public housing agencies. [Italics added.]" (*Simmons* v. *Drew, supra,* 716 F.2d at p. 1161.) Thus, the regulations in question were promulgated by HUD.

"The federal policy of providing decent, safe and sanitary housing for all families, first articulated in the United States Housing Act of 1937 . . . has inspired numerous programs designed to increase the availability of housing for lower income families. The Section 8 lower income housing assistance program, which was enacted as part of the Housing and Community Development Act of 1974 . . . is one of the most ambitious of these efforts. [The Section 8] program was enacted for the dual purposes 'of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing.' . . . Section 8 was designed to achieve these goals by providing rent subsidies to lower income families living in housing owned primarily by private developers. All tenants whose incomes do not exceed 80 percent of the median income for their area are eligible for Section 8 assistance. [Fns. omitted.]" (*Holbrook* v. *Pitt* (7th Cir. 1981) 643 F.2d 1261, 1266-1267; also see *Bakos* v. *Flint Housing Com'n* (6th Cir. 1984) 746 F.2d 1179, 1179-1180.) In fact, "Congress has described the Section 8 program as 'the Nation's major tool for assisting the construction of lower income housing.' " (*Holbrook* v. *Pitt, supra,* 643 F.2d at p. 1267, fn. 7.)

Thus, it would appear that the Housing Authority's interpretation of the regulation runs counter to the purposes of the Section 8 program. To apply the regulation as the Housing Authority suggests would in effect give an applicant only one opportunity to qualify under his or her certificate of eligibility. The reason for this conclusion is that, before the PHA can approve or disapprove the proposed lease, it must find, after an inspection,

that the dwelling to be leased is in a decent, safe, and sanitary condition and that the terms of the proposed lease conform with the requirements set forth in the regulations issued by HUD. (*Bakos* v. *Flint Housing Com'n, supra,* 746 F.2d at p. 1180, fn. 3; *Simmons* v. *Drew, supra,* 716 F.2d at p. 1161.) This approval process would not allow an applicant, as here, enough time under the certificate to find another prospective lessor because, under the Housing Authority's interpretation, the 60-day period would continue to run even after the applicant has submitted a request for lease approval.

For example, if the landlord, like here, decides not to participate in the program after the request for lease approval is submitted and processed, the applicant would not have another opportunity to locate another landlord under the Housing Authority's interpretation of the regulation, even though the delay is not the fault of the applicant. Moreover, the same result would occur, even if the delay were due to the inaction of the PHA in processing a request for lease approval. It should be apparent that such an interpretation would be inconsistent with the stated purposes of the Section 8 program to aid low-income families.

As previously noted, that regulation provides, "The Certificate of Family Participation shall expire at the end of 60 days unless within that time the Family submits a Request for Lease Approval." In using the "unless" in the above regulation, HUD appears to have intended that, consistent with the purposes of the Section 8 program, the running of the 60-day period should be tolled when a family-applicant submits a timely request for lease approval.

We reach this conclusion, because a proviso or clause beginning with the word "unless" means an exception or condition subsequent rather than a condition precedent. (*John V. Carr & Sons, Inc.* v. *United States* (C.C.P.A. 1971) 326 F.Supp. 973, 975; see also *State Wholesale Groc.* v. *Great Atl. & Pac. Tea Co.* (7th Cir. 1958) 258 F.2d 831, cert. den. 358 U.S. 947 [3 L.Ed.2d 352, 79 S.Ct. 353]; *United States* v. *Winnicki* (7th Cir. 1945) 151 F.2d 56; *In re Wiegand* (S.D. Cal. 1939) 27 F.Supp. 725, 729.) Hence, we read the regulation to mean that the 60-day period continuously runs from the issuance of the certificate, *except* where a timely request is submitted and is being processed by the PHA. This interpretation provides the applicant with 60 *actual* days to locate housing and a willing landlord, consistent with the Section 8 program's purpose of aiding lower-income families in obtaining a decent place to live. (42 U.S.C. § 1437f(a).)

Accordingly, given the stated purposes of the Section 8 program and the clear language of the regulation, we conclude that the trial court properly construed 24 Code of Federal Regulations section 882.209(d)(1), *supra*.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed. Respondent Baggett shall recover costs on appeal.

Lillie, P. J., and Roberson, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.