Dorothy FRANKLIN, Plaintiff-Appellant,

v.

HOUSING AUTHORITY OF the CITY OF MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 89-1351. Submitted on briefs December 28, 1989.—Decided March 20, 1990.*

(Also reported in 455 N.W.2d 668.)

420

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lynn M. Novotnak* of *Legal Action of Wisconsin, Inc.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley,* city attorney, by *Hazel Mosley,* assistant city attorney of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J.    The Housing Authority of the City of Milwaukee (Housing Authority) terminated Dorothy Franklin's (Franklin) participation in a federally funded rent assistance program. On certiorari review, the circuit court upheld the Housing Authority's action, and Franklin appeals from the circuit court's order. Because we conclude that the Housing Authority incorrectly interpreted a federal regulation governing the program, we reverse the circuit court's order. The case is remanded

with instructions to reverse the Housing Authority's decision and to remand the matter to the Housing Authority for further action.

The Section 8 Housing Assistance Payments Program is a federal rent assistance program. It is designed to help low income families obtain "a decent place to live" and to promote "economically mixed housing."[1] The Housing Authority administers the program in Milwaukee under a contract with the Department of Housing and Urban Development (HUD). The Housing Authority pays rent subsidies to owners who agree to rent housing to low income families.

If an applicant qualifies for the program and the Housing Authority has funds available, the Housing Authority issues a certificate of family participation.[2] The certificate holder is responsible for finding suitable existing housing[3] and negotiating a lease with the owner.[4] The certificate holder then submits a request for lease approval to the Housing Authority along with a copy of the proposed lease.[5] Before the lease can be approved the Housing Authority must inspect the unit for compliance with housing quality standards intended to insure that the unit provides decent, safe and sanitary housing.[6] Any deficiencies must be corrected and the unit reinspected before the lease can be approved.[7] The certificate holder becomes a program participant when

[1] 42 U.S.C. sec. 1437f(a) (Supp. IV 1986).
[2] 24 C.F.R. sec. 882.209(a)(2), (7) and (b)(1) (1986). All C.F.R. citations are to the 1986 revision.
[3] 24 C.F.R. sec. 882.103(a).
[4] *See* 24 C.F.R. sec. 882.209(e)(2).
[5] *Id.*
[6] 24 C.F.R. sec. 882.209(h)(1).
[7] 24 C.F.R. sec. 882.209(h)(2).

the lease is approved.[8] The certificate is valid for sixty days.[9] The Housing Authority also has the discretion to extend the certificate for up to sixty additional days if it believes that there is a reasonable possibility the certificate holder may find a suitable unit.[10]

Dorothy Franklin had participated in the rent assistance program for five years when, in December 1986, she began searching for a larger rental unit. Her certificate of family participation was effective December 3, 1986, and expired on January 31, 1987. The Housing Authority subsequently extended the certificate for an additional sixty days to April 1, 1987.

On December 23, 1986, twenty-one days after the certificate's effective date, Franklin submitted a request for lease approval. After a three week delay, the unit was inspected, but it did not pass inspection. The owner was given until February 17 to make specific repairs. Although repairs were undertaken, the owner notified Franklin on March 9, 1987, that the repairs would not be completed. The owner also requested additional "under-the-table" rent. When Franklin notified the Housing Authority that the unit would not be rented, it granted the extension to April 1 and provided her an additional request for lease approval form.

On April 1, Franklin submitted a second request for lease approval. The unit was inspected and disapproved. Although given until May 7, 1987, to make repairs, the owner notified the Housing Authority on April 29, that she did not wish to participate in the program. At that time Franklin's participation was terminated because her certificate of family participation had expired. After an informal hearing, a Housing Authority's hearing

---

[8]24 C.F.R. 882.209(a)(1).
[9]24 C.F.R. sec. 882.209(d)(1).
[10]24 C.F.R. sec. 882.209(d)(2).

officer upheld the staff decision. The hearing officer concluded that Franklin had failed to locate an approved unit within the prescribed time.

Franklin filed an action in the circuit court for common law certiorari review. She challenged the Housing Authority action on the grounds that the time periods provided in 24 C.F.R. sec. 882.209(d) were tolled whenever the request for lease approval was being processed and the owner was making repairs. The circuit court, relying upon the regulations, concluded that no tolling occurred.

On appeal, Franklin argues that the Housing Authority's decision was not in accordance with law, that the decision was arbitrary, unreasonable, and inconsistent with the purposes of the rental assistance program, and that the Housing Authority abused its discretion by refusing to exercise its discretion beyond the circumstances set forth in its mitigating circumstances policy. Because we conclude that the Housing Authority's decision was not in accordance with law since it misinterpreted 24 C.F.R. sec. 882.209(d), we do not address the additional issues raised.[11]

Common-law certiorari is available to review legal questions involved in an administrative agency's decision where statutory appeal is either inadequate to address the issue or is not available.[12] Only questions of law are raised in a common-law certiorari proceeding,[13] and the procedure cannot be used to review an agency's

[11]*See Colip v. Travelers Ins. Co.,* 141 Wis. 2d 363, 365 n.1, 415 N.W.2d 525, 526 n.1 (Ct. App. 1987).

[12]*Outagamie County v. Smith,* 38 Wis. 2d 24, 34–35, 155 N.W.2d 639, 645–46 (1968).

[13]*See Id.*

exercise of legislative or judicial discretion.[14] The issues addressed by common-law certiorari are (1) whether the agency acted within its jurisdiction; (2) whether the agency acted according to law; (3) whether the agency's action was arbitrary, oppressive or unreasonable so as to represent its will and not its judgment; and (4) whether the evidence before the agency was such that it might reasonably make the determination it did.[15] When the issue is whether the agency acted according to law, the court reviews the agency's proceedings in light of due process requirements and applicable statutes.[16] In reviewing an agency's decision, the courts are limited to the record and any additional facts that can be judicially noticed.[17] Because the review is so limited, appellate courts decide the case *de novo*.[18]

Franklin challenges the Housing Authority's interpretation of 24 C.F.R. sec. 882.209(d)(1) and (2), a federal regulation.[19] The interpretation of a regulation, like

---

[14]*State ex rel. Hippler v. City of Baraboo,* 47 Wis. 2d 603, 610, 178 N.W.2d 1, 5 (1970).

[15]*State ex rel. Ruthenberg v. Annuity & Pension Bd.,* 89 Wis. 2d 463, 472, 278 N.W.2d 835, 840 (1979).

[16]*Id.* at 473, 278 N.W.2d at 840.

[17]*Hippler,* 47 Wis. 2d at 614, 178 N.W.2d at 7.

[18]*Id.* at 616, 178 N.W.2d at 8.

[19]The Housing Authority argues that construction of a regulation is beyond the scope of common law certiorari because review is limited to the record of its proceedings. The limitation restricting review to the record is an evidentiary limitation. *See State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment,* 131 Wis. 2d 101, 119, 388 N.W.2d 593, 600 (1986). The application of an erroneous interpretation of an administrative regulation is an error of law correctable by the courts through common law certiorari. *See State ex rel. Kesselman v. Board of Review,* 133 Wis. 2d 122, 127, 394 N.W.2d 745,

the interpretation of a statute, presents a question of law.[20] A court's principle aim in interpreting a regulation is to effectuate the purpose of the regulation.[21] The language of a regulation controls its interpretation.[22] Plain and clearly understood language must be given its accepted meaning.[23] Only if the regulation is ambiguous will courts apply the rules of construction.[24] A regulation is ambiguous if reasonably well-informed people can differ as to its meaning.[25] If a regulation is ambiguous, a court's task is to construe the regulation to effectuate its purpose.[26] Where the interpretation of the administering agency is reasonable and consistent with the regulation's purpose, courts will defer to the agency's interpretation.[27] We will, however, reject an unreasonable agency construction where a reasonable construction is possible.[28] In determining which of several constructions of a regulation is correct, we consider the section and related sections of the regulation as well as extrinsic materials.[29]

24 C.F.R. sec. 882.209(d)(1) and (2) provides as follows:

---

747 (Ct. App. 1986) (failure to make assessment on statutory basis is error of law).

[20]*Huff & Morse, Inc. v. Riordon,* 118 Wis. 2d 1, 4, 345 N.W.2d 504, 506 (Ct. App. 1984).

[21]*Id.*

[22]*Kerns v. Madison Gas & Elec. Co.,* 134 Wis. 2d 387, 393, 396 N.W.2d 788, 791 (Ct. App. 1986).

[23]*Id.*

[24]*Id.*

[25]*Id.*

[26]*Huff & Morse,* 118 Wis. 2d at 4, 345 N.W.2d at 506.

[27]*See State ex rel. Staples v. Department of Health & Social Servs.,* 136 Wis. 2d 487, 497, 402 N.W.2d 369, 375 (Ct. App. 1987).

[28]*Huff & Morse,* 118 Wis. 2d at 4, 345 N.W.2d at 506.

[29]*Id.* at 5, 345 N.W.2d at 506.

(d) *Expiration and extension of Certificate.* (1) The Certificate of Family Participation shall expire at the end of 60 days unless within that time the Family submits a Request for Lease Approval.

(2) If a Certificate expires or is about to expire, a Family may submit the Certificate to the PHA with a request for an extension. The PHA shall review with the Family the efforts it has made to find a suitable dwelling unit and the problems it has encountered and shall determine what advice or assistance might be helpful. If the PHA believes that there is a reasonable possibility that the Family may, with the additional advice or assistance, if any, find a suitable unit, the PHA may grant one or more extensions not to exceed a total of 60 days. Expiration of a Certificate shall not preclude the Family from filing a new application for another certificate.

The Housing Authority is the public housing authority or PHA.

■

Subsection (1) clearly and unambiguously states that the filing of a request for lease approval prevents expiration of the certificate of family participation. A California appellate court has held that the filing of a request for lease approval tolls the running of time within which a certificate holder must locate suitable housing.[30] In *Baggett v. Housing Authority,* the California Court of Appeals rejected as unreasonable an interpretation that the language merely extended the agency's authority to approve or disapprove the lease.[31] The *Baggett* court concluded that the use of the subordinating conjunction, "unless," to introduce the proviso clause

---

[30]*Baggett v. Housing Auth.,* 240 Cal. Rptr. 640, 644 (Cal. Ct. App. 1987).

[31]*Id.* at 641.

creates a condition subsequent.[32] The timely filing of a request for lease approval stops the running of the sixty day life of the certificate.[33] Consequently, a family has sixty actual days under subsection (1) to locate suitable housing and a willing landlord. Excluded is the period between the filing of the request for lease approval and the date the certificate holder is notified of the agency's action on the request.[34] The *Baggett* court's reasoning is persuasive, and we adopt its rationale.

The Housing Authority argues that the *Baggett* decision did not construe subsection (2) and that consideration of that subsection produces a different result. We disagree. Subsection (2) merely provides that any extensions may not exceed a total of sixty days. The language does not preclude an interpretation that the time is tolled when the Housing Authority is processing the request.[35]

The Housing Authority also argues that the *Baggett* interpretation is inconsistent with documents provided by HUD. The certificate itself contains the expiration date and provides that "[t]he proposed Lease, and the Request for Lease approval must be submitted to the [Housing Authority] *no later than the expiration date stated* . . .. The Certificate will expire on that date

---

[32]*Id.* at 644.

[33]*Id.*

[34]*Id.* at 644, 642.

[35]Under the language of 24 C.F.R. sec. 882.209(d)(2), an extension is not automatic. An extension is to be granted if the Housing Authority believes the family may find a suitable unit. Additionally, the extension may be for less than 60 days so long as the total extensions granted do not exceed 60 days. Under our interpretation of 24 C.F.R. sec. 882.209(d), that is 60 days exclusive of the time a request for lease approval is being processed or repairs are undertaken.

unless the [Housing Authority] grants a written extension of the Certificate." Our interpretation is not inconsistent with this language since a request for lease approval must be submitted to toll the expiration of the certificate. At the end of the tolled period, a new expiration date will be calculated by adding the time that was tolled to the stated date.

The trial court, in affirming the Housing Authority's decision, relied upon 24 C.F.R. sec. 882.209(1)(2). Subsection (1)(2) specifically provides that when a lease is rejected because repairs are needed, the certificate will not expire before the date specified for completing repairs. This subsection, however, does not address whether filing a request for lease approval tolls a certificate while the Housing Authority is processing the request. Section 882.209(1) tolls the time period from the notice that repairs are needed to the repair deadline.

Our interpretation is also consistent with the intent of the housing program, statutes, and regulations. The tenants are the primary beneficiaries of the Section 8 program because the rent subsidies allow them to secure decent, sanitary and safe housing.[36] Issuance of the certificate limits the Housing Authority's right to deny rent assistance until the certificate expires, much the same way tenure confers rights on a public school teacher.[37] The certificate holder's right is one to seek out, in a timely fashion, persons willing to lease housing to them under the rules of the program.[38] By the language of 24 C.F.R. sec. 882.209(d)(1), a timely fashion is sixty days unless an extension is granted. If the certificate holder acts promptly, it is unreasonable to charge him or her

---

[36]*Holbrook v. Pitt,* 643 F.2d 1261, 1271 (7th Cir. 1981).
[37]*Simmons v. Drew,* 716 F.2d 1160, 1162 (7th Cir. 1983).
[38]*Id.*

with delays caused by the Housing Authority or by an owner's need to make repairs.

Applying our interpretation of sec. 882.209(d) to the facts of this case, we conclude that Franklin's participation in the program was terminated prematurely. Franklin submitted her initial request on December 23, the 21st day of the certificate. Expiration of the certificate was tolled while the Housing Authority reviewed the request and while the owner undertook repairs before the repair deadline. The repair deadline was February 17. Consequently, the new expiration date for the certificate was March 28. The Housing Authority, however, had already granted Franklin a sixty-day extension. We assume that Franklin satisfied the criteria for an extension and that an extension would have been granted had the Housing Authority properly interpreted 24 C.F.R. sec. 882.209(d). When Franklin submitted a second request for lease approval on April 1, only four days had run on the extension. The second owner withdrew on April 29 before the deadline for repairs. Consequently, on April 29 Franklin still had fifty-six days within which to submit another request for lease approval. The Housing Authority's decision to drop Franklin from the program was based on an erroneous application of the law. Consequently, we reverse the order of the circuit court and direct it to remand the matter to the Housing Authority for further proceedings.[39]

*By the Court.*—Order reversed and cause remanded.

[39]Franklin's complaint also sought damages and attorney's fees. Because these matters require inquiry beyond the agency's record, they are beyond the scope of common law certiorari review.