[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12006

_____

D.C. Docket No. 1:13-cv-00105-WS-B

DONAVETTE ELY,

Plaintiff - Appellant,

versus

MOBILE HOUSING BOARD,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 27, 2015)

Before MARCUS and ROSENBAUM, Circuit Judges, and FRIEDMAN,[*] District
Judge.

PER CURIAM:

Donavette Ely appeals from the district court's order granting summary

judgment to the Mobile Housing Board ("Board").  Ely brings several claims

---

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting
by designation.

stemming from the Board's refusal to extend the term of her housing voucher and to provide her with additional notice and a hearing before removing her from its housing assistance program. Specifically, she argues that the Board deprived her of constitutional due process; that the Board violated regulations promulgated by the federal Department of Housing and Urban Development ("HUD"); and that the Board refused to provide a reasonable accommodation, in the form of a voucher extension or an increase in the amount of her voucher, for her son's disability. The district court held that Ely was not entitled to relief on any of her claims. Finding no error, we affirm.

I.

The Mobile Housing Board administers a Housing Choice Voucher Program under Section 8 of the Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, Pub. L. 93-383, 88 Stat. 633. Section 8 authorizes payments to low-income families to assist them in obtaining homes, and it also allows the federal government to contract with local public housing agencies which then make those payments directly. 42 U.S.C. § 1437f (2012). An applicant provides the Board with family and income information that the Board uses to calculate the maximum total rent, or "shopping amount," that a landlord can receive, as well as the maximum number of bedrooms the family is allowed to seek. The applicant then shops for a home based on the shopping amount

calculated by the Board.  Once the applicant finds an acceptable home, the Board conducts an inspection and determines the relative portions of the rent that will be paid by the Board and the applicant.  The applicant and the landlord execute a lease, and the landlord also signs a housing assistance payment contract.

Donavette Ely is a single mother who, during the time period relevant to this case, had four children.  Her oldest son, Devin, suffers from asthma, which can be triggered or exacerbated by the temperature of his room.  In 2009, the Ely family had a voucher for a three-bedroom unit.  Ely sought to increase the size of the voucher to four bedrooms to allow Devin to have his own room with separate temperature controls.  She submitted a letter to the Board from a Mobile County Health Department doctor, Mark Donohue, which stated that "Devin would benefit from having separate thermostat controls in his bedroom."  She provided a second letter from Donohue after the Board advised her that the letter needed to be on health department letterhead.  The Board subsequently rejected her request for a four-bedroom voucher, and stood by its decision after Ely failed to appear for an informal hearing on the matter.

Ely tried once again to obtain a four-bedroom voucher in early 2010. Notably, this time, she failed to submit the requisite reasonable accommodation form to the Board, because her son's doctor "'felt uncomfortable' completing the form."  Nevertheless, the Board eventually gave Ely a four-bedroom voucher valid

3

from May 13 to July 12, 2010, with a shopping amount of $746 per month.[1]  Ely refused to accept the voucher because a board employee had corrected the number of bedrooms and the issuance and expiration dates on the voucher in handwriting and initialed the changes.  The record contains no evidence that Ely made any further attempts to obtain an acceptably corrected voucher until July 12, the last day of her voucher.  That same day, Ely submitted a form which she labeled a "voucher extension request," and which stated that she was "requesting an extension" because she "had a hard time locating 4 bedroom [sic] in our area." The Board issued her yet another voucher lasting from July 19 to September 18, 2010.  The Board also advised her to pick up the voucher "as soon as possible," because "[n]o extensions [would] be granted upon the expiration date of the voucher."

Ely was unable to find a suitable home within her shopping amount before her voucher expired.  On September 18, 2010, which was once again the last day of her voucher, Ely submitted a "Request for Tenancy Approval" form to the Board for a home with a monthly rent of $1,200 -- well in excess of her shopping amount of $746.  In light of Ely's failure to find an acceptable home, the Board wrote to her on September 27 to inform her that "no more extensions to your

---

[1] The reason for the Board's change of heart is somewhat unclear from the record.  At the time, the Board explained that it was giving her a voucher "due to the present medical condition of [her] son, Devin."  But the Board subsequently told her that she was issued the four-bedroom voucher "when [her] family size and the ages of [her] children justified it."

voucher will be granted," and that her voucher had therefore expired on September 18. The Board sent another letter to Ely on February 1, 2011, reiterating that, "[h]aving exhausted all allowable extensions of your voucher, you are hereby terminated from the HCV Program." The letter also stated that she could request a hearing, which she did. On March 1, however, the Board sent another letter to Ely which explained that the Board was not required to give her a hearing, and that she would receive neither an extension of her voucher nor a hearing to review the Board's decision.

II.

Ely filed suit in the United States District Court for the Southern District of Alabama on March 1, 2013. She asserted, essentially, three categories of claims. First, she brought a claim under 42 U.S.C. § 1983 (2012), alleging that the Board's refusal to provide her with notice and a hearing before removing her from the housing program deprived her of constitutional due process. Second, she argued that the Board's same refusal violated federal law, in the form of HUD regulations.[2] Third, she claimed that the Board was obliged to extend the term of her voucher as a reasonable accommodation for her son's disability, and that the

---

[2] Ely also asserted violations of 42 U.S.C. § 1437d (2012) in her complaint. As the district court observed, however, she never explained how the Board violated this statute, aside from its alleged violations of HUD regulations. Ely v. Mobile Hous. Bd., 13 F. Supp. 3d 1216, 1228 n.13 (S.D. Ala. 2014). Because her argument on appeal focused solely on the HUD regulations, we do not separately consider whether the Board violated § 1437d.

Board, in effect, engaged in discrimination.  She asked for damages as well as an injunction barring the Board from terminating her housing benefits.

The Board moved for summary judgment, which the district court granted on April 7, 2014.  The district court held that Ely's constitutional rights were not violated because any property interest she had in her voucher lapsed when her voucher expired by its own force.  Ely v. Mobile Hous. Bd., 13 F. Supp. 3d 1216, 1226-28 (S.D. Ala. 2014).  Nor did the fact that the Board told her she could request a hearing oblige the Board to give her one, because "constitutional law does not create property interests by estoppel."  Id. at 1227.  As for Ely's regulatory claims, the district court noted that the relevant regulations do not require the Board to provide notice or a hearing before denying a request for a voucher extension, see 24 C.F.R. § 982.555(b)(4), (c) (2014), and that the grant or denial of a request for an extension is itself discretionary, see id. § 982.303(b)(1).  Ely, 13 F. Supp. 3d at 1228-30.  Lastly, the district court rejected Ely's reasonable accommodation claim because she never informed the Board that an extension was necessary to accommodate her son's disability.  Id. at 1232-33.  Ely filed a timely appeal to this Court.

### III.

We review a district court's grant of summary judgment de novo.  Myers v. Bowman, 713 F.3d 1319, 1326 (11th Cir. 2013).  Summary judgment is

6

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After thorough review of the record and the parties' briefs, and with the benefit of oral argument, we discern no error in the district court's thorough and well-reasoned opinion. We conclude that there are no genuine disputes of material fact, and that the district court was correct to grant final summary judgment to the Board.

Ely first asserts that the Board violated her due process rights. It is black-letter law that "a § 1983 claim alleging a denial of procedural due process requires proof of . . . a deprivation of a constitutionally-protected liberty or property interest." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). As the Supreme Court has explained, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). She "must, instead, have a legitimate claim of entitlement to it." Id. Ely claims that she had a property interest in her housing voucher, and that she was deprived of that interest without due process when the Board removed her from the housing program.

Ely's argument, however, elides an essential distinction: her voucher expired by its own force and was not "terminated" by the Board. The Board's statement in its February 1 letter that she had been "terminated from the HCV program"

7

because she had "exhausted all allowable extensions of [her] voucher" was simply an acknowledgement that her voucher had expired and would not be extended. We agree with the district court that a recipient's property interest in a housing voucher lapses when that voucher expires. Ely, 13 F. Supp. 3d at 1227-28.[3] Ely cannot show a "legitimate claim of entitlement" to the continued extension of her voucher, especially since decisions to suspend or extend the term of a voucher are left largely to the discretion of the Board. 24 C.F.R. § 982.303(b). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). Ely's due process claim fails because Ely possessed no property interest to which due process could attach.

Ely also claims that the Board was obliged to give her a hearing after it told her that she could ask for one. The Supreme Court and this Court have rejected attempts to find constitutional entitlements by estoppel. See, e.g., Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981) ("A constitutional entitlement

---

[3] Our sister circuits have generally agreed. See, e.g., Augusta v. Cmty. Dev. Corp. of Long Island, 363 F. App'x 79, 80 (2d Cir. 2010) (per curiam) ("[T]he district court did not err in finding that defendant was entitled to summary judgment because the evidence established that plaintiff's voucher was not terminated before it expired by its own terms, and plaintiff was therefore never entitled to a hearing."); Burgess v. Alameda Hous. Auth., 98 F. App'x 603, 605 (9th Cir. 2004) (per curiam) ("Burgess is unable to claim an entitlement to a further extension of her Section 8 voucher, as such extensions were discretionary under the regulations in effect at the time Burgess that [sic] made her request."); see also Simmons v. Drew, 716 F.2d 1160, 1162 (7th Cir. 1983) ("A certificate limits the power of a [public housing agency] to deny rent assistance to the family that holds it; until the certificate expires, it gives the family the right to continue participating in the program so long as the PHA lacks just cause to expel it.").

8

cannot 'be created -- as if by estoppel -- merely because a wholly and <u>expressly</u> discretionary state privilege has been granted generously in the past.'") (quoting <u>Leis v. Flynt</u>, 439 U.S. 438, 444 n.5 (1979) (per curiam)); <u>Bryan Media, Inc. v. City of St. Petersburg</u>, 293 F. App'x 717, 718 (11th Cir. 2008) (per curiam) (rejecting the proposition that "plaintiff's estoppel argument can give rise to a property interest"). The Board's mere statement that Ely could request a hearing, standing alone, does not mean that she was entitled to receive one.

Ely fares no better under the applicable HUD regulations. As those regulations make plain, a public housing agency ("PHA"), "[a]t its discretion, . . . <u>may</u> grant a family one or more extensions of the initial voucher term." 24 C.F.R. § 982.303(b)(1) (emphasis added). Nor was Ely entitled to a hearing to challenge that decision or any more notice than the Board provided. HUD's regulations state that "[t]he PHA is not required to provide a participant family an opportunity for an informal hearing for . . . a PHA determination not to approve an extension or suspension of a voucher term." <u>Id.</u> § 982.555(b)(4). The Board's decision was plainly a "determination not to approve an extension," and a hearing was, therefore, not required. These regulations also make no mention of notice in cases where a hearing is not required. <u>See id.</u> § 982.555(c). Even assuming that the Board was obliged to provide notice, we see no reason why the

multiple letters the Board sent to Ely were insufficient.  The Board did not violate any HUD regulations.

Ely places great weight on the Board's July 19 letter, which explained that the Board was issuing her a "new" voucher and that no extensions would be forthcoming.  She asserts that the Board was required to consider her request for an extension of this new voucher.  The district court correctly noted that Ely failed to raise this argument until her motion to alter the district court's judgment.  We conclude that this argument has been waived.  See, e.g., Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004); see also O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued.").  Nevertheless, it fails on the merits.  Even if the document the Board issued on July 19 was intended to be an entirely new voucher, the Board would still have discretion, pursuant to 24 C.F.R. § 982.303(b)(1), to deny any requests for an extension of that voucher.  Ely's argument that the Board was obliged to consider her request for an extension is predicated on two regulations -- 24 C.F.R. §§ 887.165 and 882.209 -- that no longer exist.  It was altogether reasonable for the Board to conclude that further extensions would likely not be merited and give Ely advance warning of that decision.

10

Finally, Ely asserts that the Board failed to accommodate her son's disability by refusing to extend the term of her voucher.[4]  Multiple federal statutes, including the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604(f)(3)(B) (2012), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 (2012), require reasonable accommodations for and bar discrimination against persons who have disabilities.  HUD's regulations also stipulate that if a family requests an extension "as a reasonable accommodation . . . to make the program accessible to a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose."  24 C.F.R. § 982.303(b)(2).  We assume, without deciding, that Ely's son Devin has a qualifying disability, and that Ely was therefore entitled to request a reasonable accommodation on his behalf.

Ely's failure-to-accommodate claim is unavailing, however, because Ely never explained to the Board that she needed a voucher extension to compensate for her son's disability.  There is no record evidence that she told the Board, for example, that her son's asthma made it more difficult for her to timely find a suitable four-bedroom home.  Nor has she articulated such a connection to this Court.  Indeed, at oral argument, counsel conceded that Ely never expressly

_____

[4] Ely also asserts a failure-to-accommodate claim based on the Board's refusal to increase the amount of her voucher, but she did not raise this claim in her complaint, which focuses solely on the extension issue. See Ely, 13 F. Supp. 3d at 1231 n.19.  To the extent her failure-to-accommodate claim arises under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2012), it fails for the same reason. Id. at 1231 n.18.

11

requested an extension of her four-bedroom voucher as a reasonable accommodation for her son's disability.  "[A] plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA."  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008).  The Board "'cannot be liable for refusing to grant a reasonable and necessary accommodation if the [Board] never knew the accommodation was in fact necessary.'"  Id. (quoting Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1275 (10th Cir. 2001)).  Even if we were to conclude that the Board had sufficient knowledge of Devin's disability from Ely's initial request for a four-bedroom voucher, which we do not, the Board was not consequently required to treat every request it ever received from Ely as a reasonable accommodation request.  While Ely was not required to use any particular "magic" words in making her request, she needed to give the Board some indication that she was requesting a reasonable accommodation for her son's disability.  She did not.

In sum, the Board did not violate any of Ely's rights under the Constitution or federal law.  Thus, we **AFFIRM**.